National State Bank of Troy agt. Hibbard.

# SUPREME COURT..

The National State Bank of Troy agt. Oscar H. Hibbard and Lucy M. his wife, William Bristol and Martha J. his wife, Adam W. Kline, C. Brown Snyder, and others.

Where there are several pieces of real estate owned by two individuals, who are doing business as a firm, and as such each mortgages his separate estate to a bank conditioned as continuing security to said bank for all loans and discounts then existing or thereafter to be made by said bank to or for said firm, then one member of the firm sells his real estate subject to the mortgage to the bank, reciting the mortgage in the deed, and the other member of the firm makes a mortgage on his real estate to a creditor of the firm, and subsequent to the mortgage to the bank thereon, and the grantee of the other real estate executes a mortgage on one of the pieces of real estate so conveyed to her to a third person : In a foreclosure by the bank of their mortgage, the subsequent mortgagees upon the different estates so mortgaged to the bank may serve upon the plaintiff answers in equity setting forth their various rights in equity,. and demand in equity a sale of the various pieces of property by the plaintiff first, as they claim will best protect their equitable rights, and either defendant, upon his answer so served upon the plaintiff, and upon the service of the necessary papers and motion upon the plaintiff, move the court for the appointment of a referee to hear the proofs of the respective parties, and to report to the court the amount due the plaintiff, and the proofs of the plaintiff's case, and also to find, decide and report upon all questions of fact and law, and upon the equities of subsequent mortgagees, and may find, decide and report to the court in what form the plaintiff shall enter his judgment and decree, and in what order he shall sell the various pieces of real estate, covered by the various mortgages, and in what way he shall satisfy his various mortgages out of the different funds ; and also as to the order of payment of the subsequent mortgagees out of the surplus moneys arising from a sale of the several parcels of land so sold. And the referee may also find, decide and report, as to the right of a subsequent mortgagee upon one parcel, to compel the plaintiff to sell another piece of property

National State Bank of Troy agt. Hibbard.

which has been sold subsequent to making the mortgage to the plaintiff thereon; first, to satisfy its due proportion of the plaintiff's debt, costs, etc., before selling the real estate covered by the other subsequent mortgage. A referee so appointed takes the place of a former master in chancery, and the rules and practice under the Code do not apply to cases in equity of this kind; by the answer the case is changed to one in equity.

The recital in a deed of a mortgage upon the land conveyed, with a clause that the grantee hereby assumes to pay and discharge the same, the grantee and his assigns are estopped from denying its validity, or of the plaintiff's right to foreclose and sell the land therein described, notwithstanding the conveyance; and a subsequent mortgagee upon another property, also mortgaged to the plaintiff to secure a part of the same debt, has a right in equity to compel the plaintiff to satisfy, from the land so conveyed, its due proportion of the burden it bears, the plaintiff holding two funds for the same debt.

A subsequent creditor upon one only of the funds has a right to throw the plaintiff, in the first instance, upon the land which the defendant has no lien and cannot reach to satisfy its proportion of the double fund, on the ground that the lands are charged with a burden, and the charge ought to be borne equally, and one part ought not to bear more than its due proportion, and equity will preserve this equality by compelling the owner of each part to pay its just proportion.

*Wyoming Special Term, May,* 1873.
O. M. HUNGERFORD, *referee.*
EXCEPTIONS to referee's report.

MOTION for confirmation of the same, for judgment, and for additional allowance of costs.

GEORGE DAY, *for plaintiff.*
D. B. CARVER, *for defendant Kline.*
A. HARRINGTON, *for defendants Martha J. Bristol, O. H. Hibbard and C. B. Snyder.*

DANIELS, *J.*—The defendants, Oscar H. Hibbard and William Bristol, were copartners in business in the years 1869 and 1870, in the village of Warsaw. On the twelfth day of January, 1869, each of the copartners executed and delivered a bond and mortgage to the Wyoming County National

Bank of Warsaw, to secure all loans and discounts made by the bank, or to be made to or for the firm. The bond and mortgage executed by the defendant Hibbard was made to secure such loans, discounts and advances, up to the sum of $5,000; while the bond and mortgage executed by Bristol was a like security, up to the amount of $10,000. Each mortgage was given upon two pieces of land owned by the copartner executing it; and under those securities the firm became indebted to the bank holding them in an amount slightly exceeding the sum of $10,000, the excess being interest upon the debt. Before the notes were given by the firm constituting the present indebtedness, Oscar H. Hibbard executed and delivered a warrantee deed, in which his wife joined, of the two parcels of land described in the mortgage given by him to the bank, to Martha J. Bristol, the wife of the other copartner, William Bristol. This deed excepted from the warrantee contained in it the mortgage given by the grantor to the bank, and contained the further provision that the grantee assumed to pay and discharge the portion of the debt that mortgage was given to secure. And after the debt had matured which the firm contracted with the bank, Martha J. Bristol, the grantee in this deed, executed and delivered a mortgage upon one of the pieces of land mortgaged to the bank to C. Brown Snyder, to secure the payment of $7,974.47, for which three promissory notes were stated in the mortgage to have been made by William Bristol and indorsed by Lowry & Jeffrey, due in four months from December 23, 1870, January 2 and February 2, 1871. This mortgage was dated on the eighth of June, 1871, and acknowledged on the sixteenth of the following September. Before that mortgage was given, and on the sixteenth of March, 1871, the defendants, William Bristol and Martha his wife, executed and delivered to Hiram H. Lee a mortgage upon both the pieces of land described in their mortgage to the bank, to secure the sum of $4,500, and interest thereon, due in one year.

This mortgage was acknowledged on the twenty-second day of March, 1871, and recorded on the same day; and on the twenty-ninth day of May, 1871, it was assigned to the defendant Adam W. Kline.

When the deed was made from Hibbard and wife to the defendant Martha J. Bristol, William Bristol executed and delivered to Hibbard, his copartner, an agreement by which he agreed either to pay to Hibbard, or, in liquidation of other partnership debts, the excess for which the premises conveyed might be sold, within a reasonable time, over the sum of $5,500; and also to pay the indebtedness of the firm of Hibbard & Bristol to the Wyoming County National Bank; and under this agreement it is now insisted by the counsel for the defendants, Hibbard, Snyder and Martha J. Bristol, that the referee erred in not reporting that the two pieces of land, included in the mortgage given by William Bristol to the bank, should not be sold before the land described in the mortgage given the bank by Hibbard to satisfy the indebtedness of the firm, of which the plaintiff has since become the assignee. The referee, instead of making such a direction, required the two pieces of land to be first sold, which are contained in the mortgage given by Hibbard and wife to the bank.

Even if the mortgage debt owing to the defendant Snyder had been properly proven before the referee, he could claim nothing more in this respect than Martha J. Bristol, the mortgagor. For before the mortgage was given to him her husband, William Bristol, executed and delivered the mortgage made to Lee, and afterwards assigned to the defendant Kline, on the premises described in the mortgage he had previously given to the bank. By this mortgage Lee acquired the right to insist that the property mortgaged to secure the debt owing to the bank should be sold and appropriated to its payment, according to the rights and interests the parties then had in the property; and this right could not be impaired by any encumbrance which Martha J. Bristol might

afterwards place upon the property conveyed by Hibbard to her in which Lee or his assignee (Kline) was not a party. By the mortgage Bristol executed to Lee, all the interest the mortgagor had at that time in the property became encumbered, and the security of the mortgagee under the mortgage given him required that such interest should be appropriated so far as that might be necessary to the payment of the debt secured to him. For that reason, if he had the right, as the mortgagee of the copartner William Bristol, to have the property conveyed by the other copartner to Martha J. Bristol sold for the payment of its share of the firm debt to the bank, as that was described in the mortgage to the bank, it was neither changed nor divested by the circumstance that she, after that, mortgaged the property conveyed to her to Snyder. By the mortgage given to Lee by Bristol, the former therefore had the right to insist that the property conveyed by Hibbard to Martha J. Bristol should bear its proportion of the debt owing by the firm to the bank, in case her husband, the other copartner, had that right when he gave the mortgage on the property mortgaged to the bank to Lee. The point presented by the exceptions in effect is, whether, if no mortgages had been given after those taken by the bank, the copartner Bristol would have had the right to have the property conveyed by Hibbard, his copartner, to his wife Martha J. Bristol, sold for the purpose of paying its portion of the parnership debt after he assumed the payment of that debt by the agreement he gave to his copartner. Independently of that agreement, it seems to have been the intention of the individual copartners, in giving their mortgages to the bank, to create securities which should be equally bound for the payment of the firm debts to the amount of $10,000 ; and the excess beyond that, to the amount of $5,000, was secured by the bond and mortgage of the copartner Bristol, up to the amount of $10,000 ; the mortgages were equal securities in the hands of the bank, each equitably bound to pay one-half that amount. And that equality to that extent was

preserved by the deed given by the copartner Hibbard to Martha J. Bristol. It was taken in such form as to continue the preceding lien unimpaired by the title passing to the grantee for the payment and satisfaction of $5,000 to the bank, to which the preceding mortgage had been given. And while the agreement made between the two copartners simultaneously with the execution of the deed provided that Bristol, the husband of the grantee in the deed, should pay the debt to the bank, which at that time amounted to more than $10,000, it did so chiefly in consideration of the execution and delivery of that deed. It was in effect, according to the statement made in the contract, because that deed had been executed rendering the lands conveyed still subject to the payment of the preceding mortgage to the bank, that Bristol undertook to pay the firm debt to the bank. The agreement necessarily contemplated the continued liability of the property conveyed for the debt, and because of that continuance Bristol assumed the debt. By means of the special provision made on that subject in the deed, he had this property, together with that described in his own mortgage, to pay the debt with, and with the entire security so preserved, entered into the contract with Hibbard. It was he, and not his wife, who actually transacted the business with Hibbard when the deed was taken, and it could not have been his intention by the agreement to exonerate the land conveyed from the burthen which care appears to have been taken to specially impose upon it as a protection to him against the obligation which he assumed. The substance of the transaction seems to have been, that as Hibbard conveyed the lands he had mortgaged to the bank and had imposed upon his grantee the obligation of paying his share of the firm debt, so that the property conveyed could not be diverted from that end, Bristol, as between himself and his copartner, would assume the payment of the amount. This left the land conveyed the primary fund for the discharge of $5,000 of the debt, notwithstanding the provisions contained in the agreement, and Bris-

tol had the right as against his wife, the grantee in the deed, to insist upon that appropriation of it, and when he executed his mortgage to Lee, the same right was secured to him by force of the security then made (*Ingalls* agt. *Morgan*, 6 *Seld.*, 178). By this mortgage, Lee acquired a priority in that respect, which was not and could not be affected or disturbed by the mortgage which was afterwards given by Martha J. Bristol to the defendant Snyder, on one of the pieces of land described in the deed to her (*Wilkes* agt. *Harper*, 2 *Barb. Chy.*, 338). And that priority passed by the assignment from Lee to the defendant Kline.

But if the papers themselves did not sustain this construction, the same consequence would still follow. For the agreement made by Bristol with Hibbard, by which the former agreed to pay the firm debts to the bank, was not recorded, and no actual notice of its existence was given to Lee when he took his mortgage. He had a right to assume, from the form of the deed from Hibbard to Mrs. Bristol, that the land in her hands remained as effectually charged with one-half the debt to the bank, provided it did not exceed .$10,000, as it was while Hibbard continued to be its owner. The record gave him constructive notice of that fact, and he had the same right to act upon it that he would if the notice had been an actual one. At the time he took the mortgage executed to him by Bristol, he had an action pending for the recovery of the debt owing by the firm and by Bristol individually, and proceedings against Hibbard in bankruptcy. These suits and proceedings were discontinued in consideration of the execution and delivery of the mortgage and notes against the firm and Bristol individually were surrendered up to the amount of about $12,000. As that was done on the faith of the security created by the mortgage, without either actual or constructive notice of the agreement given by Bristol to Hibbard, it made Lee a mortgagee for value within the protection of the rule as it is now established, and the existence and provisions of that agreement cannot be relied upon either against him or

Kline, his assignee, for the purpose of qualifying their rights under the mortgage (*Brown* agt. *Leavitt*, 31 *N. Y.*, 113). The cases in which this principle has been usually considered have been those involving the rights of parties to commercial paper. * But the principle itself is the same that courts of equity have always applied for the protection of *bona fide* purchasers and encumbrances against the consequences of latent liens and infirmities of title not actually or constructively known to them at the time of the advancement of the consideration (*Stoker* agt. *McDonald*, 6 *Hill*, 93, 96). And it is clearly sufficient to entitle the mortgagee to the protection afforded by the statute against unrecorded encumbrances (3*d R. S.*, [5*th ed.*], 45, § 1).

In no view of the case have the defendants, who excepted to the report of the referee, the right to have the property conveyed to Mrs. Bristol either exonerated from the payment of its share of the mortgage debt incurred by the firm to the bank, or postponed until after the sale of the land described in the mortgage given by the defendant Martha J. Bristol.

The debt should be equally collected under both mortgages, as the principal at the time when the suit was commenced did not exceed the sum of $10,000 (*Brainard* agt. *Jones*, 18 *N. Y.*, 35); and one-half of the costs and expenses should also be added to each half of the debt, as directed by the referee. The exceptions to the referee's report because some of the evidence given on the reference was not subscribed, cannot be sustained. That was a matter of practice, and the remedy for the irregularity was by motion, for the purpose of securing its correction. The object of the exceptions was to bring up the merits of the controversy for review, not to correct omissions in mere matters of practice, and the exceptions ought to have referred specifically to the evidence required to be considered in the disposition of the points presented by them. The practice in this respect is accurately set forth in *Green* agt. *Bishop* (1 *Clifford*, 186). The exceptions must all be overruled for the reasons already given, and the report made

by the referee should be confirmed, and judgment of foreclosure and sale, in conformity with its provisions, directed in favor of the plaintiffs.

This was not a difficult and extraordinary case within the fair import of those terms. It may have been difficult in some respects, but it certainly was not an extraordinary litigation, and for that reason the motion for an additional allowance of costs should be denied.

As each party has succeeded upon one motion, no motion costs on either will be allowed.

The judgment to be entered in the action will provide for the appointment of L. W. Thayer, Esq., as referee, to execute its provisions by selling, conveying and disposing of the proceeds arising from the sale.